UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| VERTEX TOWERS LLC, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | No. 2:22-cv-00355-JDL |
| | ) | |
| TOWN OF YORK et al., | ) | |
| | ) | |
| Defendants | ) | |

RECOMMENDED DECISION ON MOTIONS FOR JUDGMENT
ON A STIPULATED RECORD AND MOTION TO DISMISS

Vertex Towers LLC claims that the Town of York's denial of its application for zoning variances to construct a 120-foot cellphone tower violates the federal Telecommunications Act because the Town's decision is unsupported by substantial evidence and amounts to an effective prohibition of personal wireless services.[1] Vertex and the Town have both moved for judgment on a stipulated record as to the substantial evidence claim, and the Town has separately moved to dismiss the effective prohibition claim for failing to state a claim. For the reasons that follow, I recommend that the Court grant judgment to the Town on Vertex's substantial evidence claim and dismiss Vertex's effective prohibition claim.[2]

---

[1] Vertex sues both the Town and the Town's Board of Appeals. For the sake of simplicity, I will refer to the Defendants collectively as the Town unless specifically referring to the Board.

[2] The Town filed its motion to dismiss before the parties filed their cross-motions for judgment. The Town has not answered Vertex's substantial evidence claim presumably because its motion to dismiss Vertex's effective prohibition claim tolled the time for it to file an answer. *See BTL Indus., Inc. v. Rejuva Fresh LLC*, No. 1:23-cv-00032-LEW, 2023 WL 3604806, at *1 (D. Me. May 23, 2023) (rec. dec.) ("[T]he majority rule is that a partial motion to dismiss suspends the time to respond to the entire complaint, not just to the claims that are the subject of the motion." (cleaned up)), *aff'd*, ECF No. 32 (D. Me. June 7, 2023). Despite the lack of answer and the pendency of the motion to dismiss, the parties have indicated that the substantial evidence claim is ready for adjudication on the stipulated

1

# I.  Background

## A.  Allegations in Vertex's Complaint

Vertex is a company that builds and operates personal wireless service facilities (PWSFs) throughout the country that are leased by various carriers to provide customers with personal wireless services.  *See* Complaint (ECF No. 1) ¶¶ 1, 10, 22-23, 25.   PWSFs typically consist of a driveway, utility connections, an equipment compound, a tower, and carriers' antennas and associated radio equipment; they operate by sending and receiving voice and data signals to and from personal wireless communications devices such as cellphones.  *See id.* ¶¶ 15-16, 24.

PWSFs are a crucial part of carriers' network infrastructures.  *See id.* ¶ 17. To maintain consistent and reliable coverage, PWSFs must be interconnected with slightly overlapping coverage so that they can hand off signals as customers move through coverage areas.  *See id.* ¶¶ 17, 20.  Radio frequency engineers use a variety of techniques to identify ideal PWSF locations including computer modeling and field testing.  *See id.* ¶ 19.  The suitability of a location for a PWSF depends on several factors including terrain, land use characteristics, and population density, as well as the coverage provided by surrounding PWSFs.  *See id.* ¶ 18.

Although carriers ultimately decide where to locate new PWSFs within their networks, they increasingly rely on third party developers such as Vertex to provide options for improving their coverage.  *See id.* ¶ 21.  Vertex identifies, surveys, tests,

---

record.  If the Court agrees with my recommendations but is concerned about acting on the cross-motions for judgment in the absence of an answer, it could first grant the motion to dismiss and give the Town an opportunity to answer before granting judgment to the Town.

and markets proposed locations for PWSFs in areas where carriers are not providing reliable service to their customers. *See id.* ¶ 23. In the last three years, Vertex has constructed eleven new PWSFs in Massachusetts, New Hampshire, and Vermont after receiving approval from municipal, state, and federal authorities; it has also received municipal approval to build PWSFs in thirty other locations throughout New England. *See id.* ¶ 26. Vertex's PWSFs have resulted—or will result—in substantial improvements to multiple carriers' services throughout the region. *See id.*

As part of these endeavors, Vertex's radio frequency engineers identified "a significant gap in wireless service impacting a roughly" three "square mile area of [the Town of] York from the intersection of US Routes 1 and 1A just past the I-95 interchange, running along York Street past Long Sands Road and ME Route 103 until reaching the seacoast, then following US Route 1A north from York Harbor along the seacoast to York Beach." *Id.* ¶ 33. The lack of reliable service in this "Target Area" is significant given its high concentration of residences, businesses, and traffic. *Id.* ¶ 34.

Using computer simulations, one of Vertex's radio frequency engineers identified a way to provide coverage to the Target Area by constructing a PWSF with a 120-foot monopole tower on a forty-four-acre parcel on York Street owned by the First Parish Church. *See id.* ¶¶ 38-39. The tower's proposed 120-foot height is necessary to accommodate up to four carriers, with each carrier's antenna array needing at least ten feet of vertical space between the next. *See id.* ¶ 41. After completing initial site designs, Vertex entered into a lease agreement with the First

Parish Church to construct the PWSF on the property.  *See id.* ¶ 42.

### B.  Stipulated Record

The Town regulates the construction of PWSFs through its Wireless Communications Facilities (WCF) Ordinance.  *See* Stipulated Record ("Record") (ECF No. 13-5) at 219-34.  Section 1.7(B) of the WCF Ordinance limits the placement of ground mounted towers greater than eighty-five feet in height to two Monopole WCF Overlay Districts comprising two areas—"the area between Route 1 and the Maine Turnpike, and the east-west corridor which is 2500 feet wide and bounded on the southwest by Route 91, on the southeast by New Boston Road and Boulter Pond and its outlet, and on the northwest by the York town line."  Record at 222. Section 1.9(E)(3) of the WCF Ordinance further limits the height of towers outside the Monopole WCF Overlay Districts by dictating that they "shall not project higher than twenty (20) feet above the average tree height, measured from the ground level." Record at 227.

In June 2022, Vertex submitted an application requesting that the Town's zoning Board of Appeals grant it variances from Sections 1.7(B) and 1.9(E)(3) of the WCF Ordinance in order to build its proposed 120-foot tower outside the Monopole WCF Overlay Districts and at a height greater than twenty feet above the surrounding tree canopy.  *See* Record at 1-2.  Along with its application, detailed project narrative, and site plans, Vertex submitted radio frequency maps and an affidavit from one of its radio frequency engineers attesting that without a tower at the proposed First Parish Church site the area would continue to have a significant

gap in coverage and that the proposed tower was "the minimum height necessary to satisfy the coverage objectives of multiple wireless carriers providing" services "in the area." *Id.* at 74-79.  Vertex also submitted a spreadsheet detailing its investigation of several alternative sites together with a statement by its site acquisition specialist that it was his professional opinion that the First Parish Church site was the "least intrusive and only available and viable" option to fill the "significant gap in coverage." *Id.* at 66-72.  Vertex further submitted several photographs from a balloon simulation it conducted showing that the tower would be barely visible above the tree canopy and then only from limited vantage points.  *See id.* at 83-116.

The Board conducted a hearing on Vertex's application in August 2022, which was ultimately continued to a second date in September 2022.  *See id.* 145-56, 160-217.  The record reflects that the Board received a letter from the fire chief supporting the proposed tower, two letters from local residents opposing the tower, and an email from the superintendent of the Town's Water District indicating that AT&T had signed a lease to place antennas on a nearby water tower.  *See id.* at 134-35, 139-44.  During the hearing, Board members heard from and questioned Vertex's agent regarding the proposed tower, the gap in coverage, alternative sites such as the water tower, and whether Vertex had sufficiently demonstrated the undue hardship necessary to grant its requested variances.  *See generally id.* at 160-217.  It also heard from several Town residents who all expressed opposition to the proposed tower for various reasons ranging from aesthetic and environmental

qualms to concerns about setting a precedent of allowing over-height towers outside the Monopole WCF Overlay Districts. *See id*. at 180-89.

During its deliberations, the Board discussed whether Vertex had shown undue hardship and questioned whether it even had the authority to grant the requested variances under the terms of the Town's general zoning ordinance; it also considered Vertex's argument that a denial of its request for variances would amount to an effective prohibition of wireless services in violation of federal law. *See id*. at 194-98. After deliberating, the Board unanimously voted to deny Vertex's requested variances on three alternative grounds: that (1) Vertex failed "to meet all of the standards for determination of 'undue hardship' specifically" that "[t]he granting of a variance will not alter the essential character of a locality"; (2) there were feasible alternatives to remedy the gap in coverage; and (3) that it (the Board) lacked the authority under the Town's zoning ordinance to grant the requested variances. *Id*. at 155-56, 197-98, 515-17. The Board subsequently issued a short written decision detailing its ultimate conclusions. *See id*. at 515-17.

Following the denial of its application, Vertex filed a two-count complaint against the Town in November 2022, alleging that the denial contravened the Telecommunications Act because it was not supported by substantial evidence (Count I) and it constituted an effective prohibition of personal wireless services (Count II). *See* Complaint ¶¶ 52-69. The Town then filed its motion to dismiss Vertex's effective prohibition claim and, while that motion was pending, the parties filed their cross-motions for judgment on a stipulated record. *See* Motion to Dismiss

6

(MTD) (ECF No. 9); Vertex's Motion for Judgment ("Vertex's Motion") (ECF No. 20);

Town's Motion for Judgment ("Town's Motion") (ECF No. 22).  All three motions have

been referred to me for a recommended decision.

## II.  Discussion

### A.  Telecommunications Act Overview

In the dawning days of our hyperconnected era, Congress passed the
Telecommunications Act (TCA) of 1996 to facilitate the development of a national
wireless communications system that had been hampered by an inconsistent
patchwork of state and local wireless tower siting regulations.  *See City of Rancho
Palos Verdes v. Abrams*, 544 U.S. 113, 127-28 (2005) (Breyer, J., concurring).  Rather
than preempt local control entirely, however, the TCA "generally preserves the
traditional authority of state and local governments to regulate the location,
construction, and modification of wireless communications facilities like cell phone
towers, but imposes specific limitations on that authority."  *T-Mobile S., LLC v. City
of Roswell*, 574 U.S. 293, 300 (2015) (cleaned up).  Those limitations include that any
decision "to deny a request to place, construct, or modify personal wireless service
facilities shall be in writing and supported by substantial evidence in a written
record" and "shall not prohibit or have the effect of prohibiting the provision of
personal wireless services."  47 U.S.C. § 332(c)(7)(B)(i)(II), (iii).

The TCA also requires that local authorities make decisions within "a
reasonable amount of time" and provides for "expedited" judicial review of those
decisions.  *Id.* § 332(c)(7)(B)(ii), (v). The First Circuit has interpreted these provisions

to mean "that Congress did not intend multiple rounds of decisions and litigation, in which a court rejects one reason and then gives the" local authority another opportunity to offer a different reason. *Nat'l Tower, LLC v. Plainville Zoning Bd. of Appeals*, 297 F.3d 14, 21 (1st Cir. 2002).  Accordingly, if a court concludes that a local authority's decision violates the TCA, the "proper remedy" is, in most instances, an order directing the local authority to authorize construction of the tower. *Id.* at 21-22; *but see T-Mobile S.*, 574 U.S. at 309 (Alito, J., concurring) ("Nothing we say today should be read to suggest that when a locality has erred, the inevitable remedy is that a tower must be built.  The Court has not passed on what remedial powers a court of competent jurisdiction may exercise.  This unanswered question is important given the federalism implications of this statute." (cleaned up)).

### B.  Cross-Motions for Judgment on the Stipulated Record

Even though the Town's motion to dismiss was filed before the parties' cross-motions for judgment, I will address the cross-motions first because a decision in Vertex's favor on its substantial evidence claim could potentially obviate the need to decide whether it should be allowed to go forward with its effective prohibition claim.  *See, e.g.*, *T-Mobile Ne. LLC v. City of Lawrence*, 755 F. Supp. 2d 286, 292 (D. Mass. 2010) ("Under the TCA, the Court may order injunctive relief if the defendant violates *either* the substantial evidence requirement or the effective prohibition ban.  Thus, having found that summary judgment will enter for the plaintiff with respect to the substantial evidence claim, the Court need not address the effective prohibition ban claim." (cleaned up)).

### i. Legal Standard

The parties have agreed that the Court should render judgment on Vertex's substantial evidence claim based on the stipulated record. Under this procedure, they have authorized the Court to resolve any disputed issues of fact in order to avoid any delay in adjudication that might have arisen had they filed cross-motions for summary judgment. *See* Joint Motion (ECF No. 14); *Boston Five Cents Sav. Bank v. Sec'y of Hous. & Urban Dev.*, 768 F.2d 5, 11-12 (1st Cir. 1985) (encouraging litigants who wish for a court to decide a case based on a written record to stipulate to the record and authorize the judge to decide any factual issues rather than file cross-motions for summary judgment).[3]

### ii. Substantial Evidence Overview

As mentioned, the TCA requires that a local authority's decision denying a request to place a cellphone tower be in writing and supported by substantial evidence. *See* 47 U.S.C. § 332(c)(7)(B)(iii). In conducting substantial evidence review, courts generally consider only the evidence submitted to the local authority and contained in the administrative record. *See Nat'l Tower*, 297 F.3d at 22. "Substantial evidence," in this context, "does not mean a large or considerable amount of evidence, but rather such evidence as a reasonable mind might accept as adequate to support a conclusion." *ATC Realty, LLC v. Town of Kingston*, 303 F.3d 91, 94

---

[3] Confusingly, after agreeing to this procedure, Vertex filed what it styled as a motion for summary judgment together with a separate statement of material facts. *See* Vertex's Motion; Statement of Material Facts (ECF No. 21). Nevertheless, it clarified in a subsequent letter to the Court that notwithstanding its "inadvertent reference" to summary judgment, it intends for the Court to render a decision on the stipulated record as originally agreed. ECF No. 23.

(1st Cir. 2002) (cleaned up).  This standard of review is "highly deferential," meaning that a local authority's reasonable resolution of conflicting evidence is conclusive even if it might have supportably reached a different conclusion.  *Second Generation Props., L.P. v. Town of Pelham*, 313 F.3d 620, 627 (1st Cir. 2002).

Also pertinent to the substantial evidence inquiry is the requirement that local authorities "provide reasons when they deny cell phone tower siting applications." *T-Mobile S.*, 574 U.S. at 302.  Because local authorities are often boards made up of laypeople, however, the reasons "need not be elaborate or even sophisticated, but rather, . . . simply clear enough to enable judicial review."  *Id.*  If the reasons are clear enough, courts may look beyond "the facts specifically offered" by the local authority and "evaluate the evidence in the record supporting those reasons."  *Sw. Bell Mobile Sys., Inc. v. Todd*, 244 F.3d 51, 60 (1st Cir. 2001), *abrogated on other grounds by T-Mobile S.*, 574 U.S. 293.

### iii.  Whether Substantial Evidence Supports the Board's Decision

Under Maine law, a zoning variance may be granted only when strict application of the ordinance would cause undue hardship.  *See* 30-A M.R.S.A. § 4353(4) (Westlaw).[4]  Undue hardship means

    A. The land in question can not yield a reasonable return unless a variance is granted;

    B. The need for a variance is due to the unique circumstances of the property and not to the general conditions of the neighborhood;

    C. The granting of a variance will not alter the essential character of the locality; and

---

[4] In its decision, the Board referenced these same factors but cited the Town's zoning ordinance incorporating 30-A M.R.S.A. § 4353(4).  *See* Record at 516.

10

> D. The hardship is not the result of action taken by the applicant or a prior owner.

*Id.*

The parties appear to agree that although the Board's foremost concern in this matter was the third of these criteria (the essential character of the locality), it also considered and based its denial on Vertex's failure to satisfy the other three. *See* Vertex's Motion at 17, 19, 26; Town's Motion at 5.   The Board's emphasis that Vertex "specifically" failed to satisfy the essential character of the locality criterion gives me some pause in reading its decision as also being based on Vertex's failure to meet the other three undue hardship criteria, but the Board did specifically inquire as to each criterion at the continued hearing, outline all four of the criteria in its written decision, and conclude that Vertex "fail[ed] to meet all of the" criteria. Record at 191-93, 197, 516-17; *see T-Mobile S.*, 574 U.S. at 308-09 (Alito, J., concurring) (noting that courts "must uphold a decision of less than ideal clarity if the [local authority's] path may reasonably be discerned" and that nothing in the TCA "imposes an opinion-writing requirement" on local authorities).   Moreover, Vertex addresses all four criteria and does not argue that the Board based the undue hardship portion of its decision exclusively on its purported failure to satisfy the essential character of the locality criterion.  *See* Vertex's Motion at 17-35.

Turning to the parties' arguments, I begin (and, as it turns out, end) my analysis with the first undue hardship criterion—that the "land in question" cannot "yield a reasonable return unless a variance is granted." 30-A M.R.S.A. § 4353(4)(A).

11

As the Law Court has explained, the "reasonable return prong of the undue hardship test is met where strict application of the zoning ordinance would result in the practical loss of all beneficial use of land.  Reasonable return is not the maximum return that could be afforded by a property."  *Wister v. Town of Mount Desert*, 2009 ME 66, ¶ 30, 974 A.2d 903 (cleaned up).

The Town argues that substantial evidence supports the Board's finding that Vertex failed to show the land in question cannot yield a reasonable return without a variance.  *See* Town's Motion at 13.  In support of its argument, the Town points to the transcript of the Board's deliberations, which includes the following exchange:

[BOARD MEMBER:] I have a question about the hardship question.

VICE CHAIR: Okay.

[BOARD MEMBER:] The reasonable return.  Can you—could you describe, again, what you said why it cannot yield a reasonable return?

VICE CHAIR: You're asking the applicant?

[BOARD MEMBER:] Yeah.  Is that—

VICE CHAIR: Go ahead.

[BOARD MEMBER:] You had—you had given a short answer.  Could you just repeat it so I—

[VERTEX'S AGENT:] I—*I will tell you, it's hard for us to say that the land cannot offer a reasonable return when it's already being used.*

However, and—and to be honest, I think all of your discussion is incredibly appropriate with one exception.

*If you cannot find under the state standard, which I agree, that's an issue . . . then you have to look at it from the federal perspective and that's* what your counsel said and our counsel and your counsel agreed.

12

So I think it's shortsighted to look at just that provision without looking at the—the bigger picture.

[BOARD MEMBER:] Okay. Well, our counsel certainly didn't say that we had to. She said we may.

VICE CHAIR: May.

[BOARD MEMBER:] We may look at it from the federal perspective—

VICE CHAIR: Yes.

[BOARD MEMBER:] —but that was not our obligation.

VICE CHAIR: Correct.

Record at 197 (emphasis added); *see* Town's Opposition (ECF No. 26) at 7.

In its motion, Vertex again concedes that "the property in question can continue to be used as a cemetery with a forested section" and a walking trail "in the absence of a variance" permitting its proposed tower. *See* Vertex's Motion at 33. But it argues that the Board's decision on the reasonable return criterion cannot withstand substantial evidence review under the TCA because the Board failed to (1) make specific findings about the criterion in its written decision and (2) recognize that such a difficult to satisfy criterion was preempted by the TCA's effective prohibition clause. *See id.* at 32-35.

On its first point, Vertex is right that the Board did not make specific findings about the reasonable return criterion, but—as the Town points out, *see* Town's Motion at 7-8—the caselaw is clear that this Court's review is not limited to just the findings in the Board's written decision, *see, e.g., Sw. Bell*, 244 F.3d at 60 ("We stress . . . that a meaningful review of the decision is not limited . . . only to the facts specifically

13

offered in the written decision. . . . [S]uch a requirement would place an unjustified premium on the ability of a lay board to write a decision."). Instead, the critical issue is whether, considering the written record as a whole, the Board's reasoning is clear enough to enable judicial review. *See T-Mobile S.*, 574 U.S. at 295 ("[T]he locality's reasons may appear in some other written record so long as the reasons are sufficiently clear . . . ."). In the circumstances of this case, where the record reflects that Vertex conceded during the Board's deliberations that it could not satisfy the reasonable return criterion of undue hardship under state law, the Board's reasons for finding Vertex failed to meet this criterion are plenty clear. *See Indus. Tower & Wireless, LLC v. Haddad*, 109 F. Supp. 3d 284, 294 (D. Mass. 2015) (noting that, although a zoning board's decision did "not contain any findings or a statement of reasons for its denial," the minutes and transcripts of the board's meeting "sufficiently reveal[ed] the reasons" for its denial); *USCOC of Greater Iowa, Inc. v. Zoning Bd. of Adjustment*, 465 F.3d 817, 824 (8th Cir. 2006) ("We are not precluded from citing record evidence in our review of the Board's decision merely because the Board failed to mention that evidence in its order. The TCA requires only that the Board's final decision be in writing and supported by substantial evidence in a written record, not that every necessary finding be in the written decision." (emphasis omitted)).[5]

---

[5] Vertex also suggests that the Board's failure to make specific findings would require remand for clarification under Maine law. *See* Vertex's Motion at 34; *McGhie v. Town of Cutler*, 2002 ME 62, ¶¶ 6-7, 793 A.2d 504 (remanding a local board's decision granting a variance where the Board only referenced the undue hardship criteria in its decision but made no findings on the record and the record was "devoid of evidence to support the zoning variance"). I am not persuaded by this point for two reasons. First and foremost, Vertex does not explain how state law articulation requirements are relevant to reviewing a board's decision under the substantial evidence requirements of the TCA. And

Vertex's other argument—that the TCA's effective prohibition clause should have somehow preempted or altered the Board's consideration of the state law reasonable return criterion—is no more persuasive. As the Town correctly points out, *see* Town's Opposition at 1-3, the "substantial evidence inquiry does not require incorporation of the substantive federal standards imposed by the TCA, but instead requires a determination whether the zoning decision at issue is supported by substantial evidence in the context of applicable *state and local law*," *T-Mobile Ne. LLC v. City of Lowell*, No. 11-11551-NMG, 2012 WL 6681890, at \*9 (D. Mass. Nov. 27, 2012) (rec. dec.) (cleaned up), *aff'd*, ECF No. 57 (D. Mass. Dec. 18, 2012); *see also ATC Realty*, 303 F.3d at 94 ("The TCA's substantial evidence test is a procedural safeguard which is centrally directed at whether the local zoning authority's decision is consistent with the applicable zoning requirements." (cleaned up)); *Town of Amherst v. Omnipoint Commc'ns Enters.*, 173 F.3d 9, 14 (1st Cir. 1999) (explaining that the TCA's substantial evidence standard "surely refers to the need for substantial evidence *under the criteria laid down by the zoning law itself* (*e.g.*, for setbacks, conditions for variances, special exception requirements)"); *Haddad*, 109 F. Supp. 3d at 298 ("It is the local zoning Bylaw which provides the applicable standard for issuing a Special Permit, and it is with reference to this standard that the Court must evaluate the 'substantial evidence' question.").

In other words, whether the Board's denial of Vertex's request for variances amounted to an effective prohibition is a separate issue from whether its conclusions

---

second, unlike in *McGhie*, the record here sufficiently reveals the Board's reasoning and contains evidence that supports its conclusion.

under state law are supported by substantial evidence. *See Am. Towers LLC v. Town of Shrewsbury*, No. 17-10642-FDS, 2018 WL 3104105, at *11 (D. Mass. June 22, 2018) ("[I]incorporating a duty to consider an effective-prohibition claim into the substantial-evidence requirement of the TCA seems to clash with the overall regulatory scheme. The two different types of claims (that is, effective prohibition and failure to provide substantial evidence) are judged according to different standards, and on a different record."). This means the caselaw that Vertex cites regarding effective prohibition is irrelevant in this context. *See* Vertex's Motion at 33-34.

Vertex does point to two somewhat anomalous decisions from the District of Massachusetts holding that local authorities must consider whether their decisions amount to an effective prohibition under the TCA. *See* Vertex's Motion at 33; Vertex's Opposition (ECF No. 27) at 20; *Nextel Comms. of the Mid-Atl., Inc. v. Town of Wayland*, 231 F. Supp. 2d 396, 406-07 (D. Mass. Nov. 22, 2002) ("Under the [TCA], the Board cannot deny the variance if in doing so it would have the effect of prohibiting wireless services."); *Sprint Spectrum L.P. v. Town of Swansea*, 574 F. Supp. 2d 227, 236 (D. Mass. 2008) (citing *Wayland* and holding similarly). But *Wayland* and its progeny do not carry the day because they are directly contradicted by First Circuit caselaw and have been called into doubt by more recent decisions by judges on the same court. *See, e.g.*, *Second Generation Props.*, 313 F.3d at 630 ("The TCA does not expressly authorize local zoning boards to consider whether individual decisions amount to an effective prohibition. Since board actions will be invalidated

16

by a federal court if they violate the effective prohibition provision, many boards wisely consider the point . . . [But n]o special deference is given to the [boards'] conclusion[s] on this point." (cleaned up)); *Am. Towers*, 2018 WL 3104105, at *11 ("The Court . . . disagrees with the *Wayland* court, and concludes that the Board need not consider the requirements of the TCA. *The relevant standard the Board must use to determine a variance is that set forth by state and local law, and this Court's substantial evidence review is limited to the Board's decision under that standard.*" (emphasis added)).[6]

At bottom, the Board's conclusion under Maine undue hardship law that Vertex failed to satisfy the reasonable return criterion is supported by substantial evidence—a reasonable mind could accept Vertex's concession on this point before the Board as adequate to support the Board's conclusion.  Because Vertex's failure to satisfy the reasonable return criterion is enough by itself to support the Board's finding that Vertex failed to show the necessary undue hardship to grant its request for variances, I need not address the Board's alternative reasons for denying Vertex's request, and the Court should grant judgment in favor of the Town on Vertex's substantial evidence claim (Count I).   *See Brooks v. Cumberland Farms, Inc.*,

---

[6] Vertex also cites a case where the New Hampshire Supreme Court held that one of that state's undue hardship criteria should be interpreted more broadly to avoid an effective prohibition under the TCA. *See* Vertex's Motion at 33; *Daniels v. Town of Londonderry*, 953 A.2d 406, 412 (N.H. 2008).  It should go without saying, however, that New Hampshire's undue hardship law has no bearing on Maine's undue hardship law.  Vertex additionally cites a Law Court case to show that the reasonable return criterion is flexible and should be interpreted less strictly in the context of cellphone tower variances. *See* Vertex's Motion at 34; *Hill v. Town of Wells*, 2021 ME 38, ¶¶ 23-25, 254 A.3d 1161.  That case, however, had nothing to do with cellphone towers and focused on the essential character of the locality criterion, not the reasonable return criterion.  *See Hill*, 2021 ME 38, ¶ 32 n.12, 254 A.3d 1161 (noting that neither side challenged the local board's conclusion that the reasonable return criterion was met).

1997 ME 203, ¶ 13, 703 A.2d 844 (noting that a variance applicant must prove "each" of the 30-A M.R.S.A. § 4353(4) criteria "[t]o establish undue hardship" and obtain a variance); *Sw. Bell*, 244 F.3d at 60 n.3 (declining to address whether substantial evidence supported alternative reasons for a zoning board's denial of the plaintiff's permit application after concluding that one of the board's reasons was sufficient and supported by substantial evidence).

## C. The Town's Motion to Dismiss

I now turn to the Town's motion to dismiss Vertex's effective prohibition claim. Unlike with the parties' cross-motions for judgment, my analysis under Fed. R. Civ. P. 12(b)(6) is cabined to the facts alleged in Vertex's complaint. I must "accept as true all well-pleaded facts set out in the complaint and indulge all reasonable inferences in" Vertex's favor. *SEC v. Tambone*, 597 F.3d 436, 441 (1st Cir. 2010). To survive dismissal, Vertex's well-pleaded facts must "possess enough heft to show that [it] is entitled to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (cleaned up).

### i. Effective Prohibition Overview

The TCA dictates that a local authority's regulation of the placement of personal wireless service facilities "shall not prohibit or have the effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i)(II). This "standard can be violated even if substantial evidence exists to support the denial of an individual permit." *Green Mountain Realty Corp. v. Leonard*, 688 F.3d 40, 57 (1st Cir. 2012) (cleaned up).

18

The First Circuit has established a two-step process for determining whether an effective prohibition has occurred. *See id.* at 57-58. First, the Court must determine whether a "significant gap" in coverage exists, considering factors such as "the physical size of the gap, the area in which there is a gap, the number of users the gap affects, and whether all of the carrier's users in that area are similarly affected by the gaps." *Omnipoint Holdings, Inc. v. City of Cranston*, 586 F.3d 38, 49 (1st Cir. 2009). Second, the Court must decide whether there are no feasible alternatives to close the gap in coverage other than the applicant's proposal such that the locality's decision constitutes an effective prohibition. *See Green Mountain*, 688 F.3d at 58.

As discussed, an "effective prohibition claim presents questions that a federal district court determines in the first instance without any deference to the local regulatory authority." *Id.* (cleaned up). Accordingly, "a district court may rely on evidence presented in court that is outside of the administrative record compiled by the local authority." *Id.* (cleaned up).

### ii. Whether Vertex Has Stated an Effective Prohibition Claim

In its motion, the Town argues that Vertex has failed to state an effective prohibition claim because it is a tower developer that does not itself provide personal wireless services and it has not alleged that any carrier has committed to using its proposed tower. *See* MTD at 2-3. The Town argues that the "absence of any specific carrier's participation or supporting data renders" it impossible to determine, under the first prong of the First Circuit's significant gap test, the size, area, and effect of

19

the purported gap, rendering Vertex's claim "conclusory, speculative, and implausible." *Id.* at 3. The Town also asserts that Vertex's claim "fails as a matter of law" because, with no carrier participation, it cannot show that its plan is the only feasible plan in order to satisfy the second prong of the significant gap test. *Id.*

Opposing the Town's motion, Vertex insists that it has "standing" to bring an effective prohibition claim even as a noncarrier infrastructure developer. *See* MTD Opposition (ECF No. 10) at 6-10. And although it maintains that it has alleged sufficient facts to state an effective prohibition claim under the First Circuit's significant gap test, *see id.* at 10-13, Vertex also argues that the First Circuit's test has been superseded by a 2018 declaratory ruling by the Federal Communications Commission (FCC) clarifying that an effective prohibition occurs when "a state or local legal requirement 'materially inhibits a provider's ability to engage in any of a variety of activities related to its provision of a covered service,'" *id.* at 14 (emphasis omitted) (quoting *In the Matter of Accelerating Wireless Broadband Deployment by Removing Barriers to Infrastructure Investment*, 33 FCC Rcd. 9088, 9104 (2018) [hereinafter *2018 FCC Ruling*]).[7]

In its reply, the Town emphasizes that it is not challenging Vertex's standing to bring an effective prohibition claim but rather the legal sufficiency of Vertex's allegations. *See* MTD Reply (ECF No. 11) at 3 n.5. It also disputes that the 2018 FCC Ruling supplanted the First Circuit's significant gap test but argues in the

---

[7] Interestingly, Vertex told the Board that the First Circuit's significant gap test "remains good law, and is binding upon federal district courts in Maine." Record at 130.

alternative that Vertex has failed to plead adequate facts to support an effective prohibition claim under either standard.  *See id.* at 5-7.

The Town has the better argument.  Try as it might, Vertex cannot overcome the plain language of the TCA, which preempts local tower siting decisions that effectively prohibit "*the provision of personal wireless services.*"   47 U.S.C. § 332(c)(7)(B)(i)(II) (emphasis added); *see id.* § 332(c)(7)(C)(i) ("[T]he term 'personal wireless services' means commercial mobile services, unlicensed wireless services, and common carrier wireless exchange access services . . . ."); *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 919 F.3d 121, 128 (1st Cir.  2019) ("If the statute's language is plain, the sole function of the courts is to enforce it according to its terms." (cleaned up)).  Where Vertex acknowledges that it does not provide personal wireless services and does not allege that any carriers have agreed to use its proposed tower to provide wireless services, it has failed state a plausible claim that the Board's denial of its variance request effectively prohibits the provision of wireless services.

This is true under either the First Circuit's significant gap test or the FCC's material inhibition standard.  Even assuming that Vertex's allegations regarding an all-carrier gap in coverage are sufficient to satisfy the first prong of the significant gap test, it cannot—as a matter of commonsense—show that its plan is the only feasible way to rectify that gap when it has not alleged that any carrier has agreed to use its proposed tower to provide coverage (let alone four carriers as the tower is designed to support).  *See Green Mountain*, 688 F.3d at 58.  For the same reason, even assuming the FCC's material inhibition standard has supplanted the significant

gap test, Vertex's allegations are insufficient to show that the Board's decision materially "inhibits *a provider's* ability to engage in any of a variety of activities relating to its *provision of a covered service.*"   2018 FCC Ruling, 33 FCC Rcd. at 9104-05 (emphasis added); *see also In the Matter of Petition for Declaratory Ruling to Clarify Provisions of Section 332(C)(7)(B)*, 24 FCC Rcd. 13994, 14017 (2009) (indicating that the effective prohibition clause's limitation on state and local authority "applies not just to the first *carrier* to enter the market, but also to all subsequent entrants" (emphasis added)); *Alta Towers, LLC v. City of New Braunfels*, No. 5:16-cv-00726-XR, 2017 WL 2703585, at *3 (W.D. Tex. June 22, 2017) (holding that a tower developer could not seek relief under 47 U.S.C. § 332(c)(7)(B)(i)(I)—a subsection of the TCA prohibiting local authorities from discriminating against providers of functionally equivalent services—because it was not a service provider, which "in the telecommunications context, . . . refers to wireless carriers like Verizon and Sprint").

While Vertex cites several cases involving tower developers to refute the Town's argument, *see* MTD Opposition at 6-10, those cases either involved developers litigating effective prohibition in relation to the specific carriers that had agreed to use the developers' proposed towers or did not address the issue of effective prohibition, *see Indus. Tower & Wireless, LLC v. Esposito*, No. 17-057-JJM-PAS, 2018 WL 526334, at *4 n.3 (D.R.I. Jan. 22, 2018) (expressly declining to "consider the parties' arguments on effective prohibition" after concluding that the local authority's decision was not supported by substantial evidence); *ExteNet Sys., Inc. v. City of*

*Cambridge*, 481 F. Supp. 3d 41, 47 (D. Mass. 2010) (noting that the plaintiff "wholesale, facilities-based telecommunications services provider" had "a contract with AT&T to install" the small wireless facilities at issue in the case); *VWI Towers, LLC v. Town of North Andover Planning Bd.*, 404 F. Supp. 3d 456, 460 (D. Mass. 2019) (noting that "Verizon and AT & T agreed to enter into separate leases" with the plaintiff tower developer "whereby they would co-locate their antennas on the" proposed tower); *Haddad*, 109 F. Supp. 3d at 291 (noting that "[t]hree cellular carriers, Verizon Wireless, AT & T Mobility, and MetroPCS, sought to co-locate on" the tower developer's proposed tower and joined the developer as "co-applicants"); *Green Mountain*, 688 F.3d at 44 (noting that the tower developer plaintiff had "obtained letters of intent from two carriers, T-Mobile and MetroPCS, stating their intention to locate antennae on the proposed tower"); *ATC Realty*, 303 F.3d at 95 ("This case does not involve a claim that the Board has effectively prohibited the provision of telecommunication services needed to close a service gap.").

In light of the TCA's broad conferral of standing, *see* 47 U.S.C. § 332(c)(7)(B)(v), it makes sense that tower developers can litigate effective prohibition claims on behalf of the specific carriers for which they seek to build towers because, in such circumstances, it can still be discerned how a local authority's decision will affect the carriers' ability to provide wireless services (e.g., if Acme Tower Developer is prohibited from building a tower for Acme Wireless Provider at the proposed location, Acme Wireless Provider will be unable to provide coverage to the area). But if a tower developer could show an effective prohibition based merely on its hope that some

carrier will agree to use its tower at some point, it is unclear to me how a local authority could ever show that its decision did not amount to an effective prohibition at least under some hypothetical scenario.  And given that the usual remedy for a TCA violation is an injunction requiring the local authority to permit the construction of the proposed tower (and, indeed, that is the remedy Vertex seeks here), it would be against the spirit of the TCA's cooperative federalism to force a locality to allow the construction of a tower that might never actually be used.[8]

At bottom, Vertex's allegations are insufficient "to support the reasonable inference that the" Board's decision amounted to an effective prohibition of wireless services.  *García-Catalán v. United States*, 734 F.3d 100, 103 (1st Cir. 2013) (cleaned up); *cf. Global Tower Assets, LLC v. Town of Mount Vernon*, 22 F. Supp. 3d 47, 58 (D. Me. May 27, 2014) ("The Court simply cannot infer from Plaintiffs' vague and conclusory statements that they have adequately pleaded an effective prohibition claim.").  Accordingly, Vertex's effective prohibition claim (Count II) should be dismissed.[9]

_____

[8] Vertex emphasized at oral argument that it agreed not to build the tower unless it obtained a carrier commitment and that it would have sought a waiver of the WCF Ordinance's carrier requirement if its matter had proceeded to the Town's Planning Board.  I fail to see how these things change the plausibility of its claim that the Board's denial of its requested variances amounted to an effective prohibition.  Moreover, in its complaint, Vertex seeks an unconditional order directing the "Board and/or the Town" to "grant all other permits and approvals necessary to construct, maintain, and operate" its proposed tower.  Complaint at 15.

[9] To the extent that Vertex complains that it is being forced to prove its entire case in its pleadings or suggests that it could flesh out its effective prohibition claim if allowed to proceed to discovery, the Supreme Court has made clear that pleading sufficient facts is what unlocks the doors to discovery and enables a plaintiff's claim to survive a motion to dismiss.  *See Twombly*, 550 U.S. at 556-57 ("Asking for plausible grounds to infer [illegal conduct] does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]. . . . The need at the pleading stage for allegations plausibly suggesting (not merely consistent with) [illegal conduct] reflects the threshold requirement of [Fed. R. Civ. P.] 8(a)(2) that the plain statement possess enough heft to show that the pleader is entitled to

### III.  Conclusion

For the foregoing reasons, I recommend that the Court (1) **GRANT** the Town's motion for judgment on Count I; (2) **DENY** Vertex's motion for judgment on Count I; and (3) **GRANT** the Town's motion to **DISMISS** Count II.[10]

### *NOTICE*

*A party may file objections to those specified portions of a Magistrate Judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the District Court is sought, together with a supporting memorandum and request for oral argument before the District Judge, if any is sought, within fourteen (14) days after being served with a copy thereof.  A responsive memorandum and any request for oral argument before the District Judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the District Court and to appeal the District Court's order.*

Dated: July 31, 2023

/s/ Karen Frink Wolf
United States Magistrate Judge

---

relief." (cleaned up)); *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. . . . [O]nly a complaint that states a plausible claim for relief survives a motion to dismiss.").

[10] *See supra* n.2 regarding the Town's lack of answer to Count I.